Robert HICKS, Individually and on behalf of all others similarly situated,

v.

CROWN ZELLERBACH CORPORA-TION, the International Brotherhood of Pulp, Sulphite and Paper Mill Workers, Magic City Local No. 362, of the International Brotherhood of Pulp, Sulphite and Paper Mill Workers, Bogalusa Local 624 of the International Brotherhood of Pulp, Sulphite and Paper Mill Workers.

Civ. A. No. 16638.

United States District Court,
E. D. Louisiana,
New Orleans Division.

Jan. 7, 1971.

Richard B. Sobol, Washington, D. C., George Cooper, New York City, Lolis Elie, Nils R. Douglas, Collins, Douglas & Elie, New Orleans, La., for plaintiffs-intervenors.

Michael J. Molony, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Crown Zellerbach Corp.

C. Paul Barker, Dodd, Hirsch, Barker & Meunier, New Orleans, La., James E. Youngdahl, McMath, Leatherman, Woods & Youngdahl, Little Rock, Ark., for defendant unions.

Daniel Steiner, Washington, D. C., Acting Gen. Counsel for U. S. Equal Employment Opportunity Commission, amicus curiae.

## DECREE

HEEBE, District Judge.

This case having come on for a hearing on the merits of the complaint of the plaintiffs, and this Court having previously ordered preliminary and permanent relief with respect to certain aspects of it, and the Court now wishing to issue one complete and comprehensive decree,

It is now the order of the Court that, for the reasons heretofore assigned, the relief sought should be, and the same is hereby, granted as follows.

## I. SENIORITY

The defendants, Crown Zellerbach Corporation, Local 362, International Brotherhood of Pulp, Sulphite and Papermill Workers, AFL–CIO, and the International Brotherhood of Pulp, Sulphite and Papermill Workers, AFL–CIO, their officers, agents, employees, servants and all persons and all organizations in active concert or participation with them, are hereby permanently enjoined and restrained from discriminating against the Negro employees of the defendant Crown Zellerbach Corporation's box plant, grocery bag plant and multiwall bag plant in Bogalusa, Louisiana, in violation of Title VII of the Civil Rights Act of 1964, and in particular, the defendants are hereby Ordered to abolish forthwith the system presently in force at the said box plant, grocery bag plant and multiwall bag plant, by which employees in a position to compete for promotion to vacant job slots in a particular line of progression are awarded promotions on the basis of "job seniority," and any other seniority system designed to discriminate against the Negro employees at said plants or having the effect of so discriminating, insofar as such "job seniority" or other systems apply to the promotion, demotion or selection for training of Negro employees hired prior to April 7, 1964, in competition with employees of the opposite race; and the said defendants are ordered to establish, with respect to such promotions, demotions and selection for training, and in the place of such "job seniority" or similar systems, a system of "plant seniority" as follows:

(1) Total plant seniority (i. e., the length of continuous service in the box plant, grocery bag plant and multiwall bag plant) alone shall determine who the "senior" bidder or employee is for the purposes of permanent or thirty-day promotions, or for purposes of demotion, in all circumstances in which one or more of the competing employees is a Negro employee hired prior to April 7, 1964; total "plant seniority" will be calculated on the basis of the length of continuous service in the individual plant where the employee is working;

(2) For jobs which operate only one shift per day, promotions or assignments from the unassigned groups to fill casual or vacation vacancies will be made on the same basis as permanent and thirty-day promotions;

(3) For jobs which operate more than one shift per day, promotions because of casual or vacation vacancies, or assignments from the unassigned groups because of casual or vacation vacancies, will be awarded to the senior (as determined in (1) above) qualified man on the shift and/or machine where the vacancy exists;

(4) Waiver provisions of the collective bargaining agreement will continue to apply except that in the case of demotion, if the man in the higher job is senior in terms of mill seniority to the man below him who has previously waived, the employee in the higher job will not be required to demote around the man who waived but will be considered senior where a member of the affected class is involved;

(5) When the employees competing for a vacancy include (a) an employee who has waived and subsequently reinstated and who is senior to the others

competing for the job; and (b) an employee or employees who have established rights around that senior employee; and (c) an employee or employees who are junior to the employee who had waived and reinstated but senior to the employee or employees with the established rights around the previously waived employee, then the senior employee (under mill or job seniority), other than the reinstated employee, is entitled to the promotion;

(6) Qualified employees shall be selected for training on the same basis as for promotion described above; and

(7) The provisions of Section I of this order shall not apply to the Over the Road Trucking Department in the box plant. Ten days after the date of this order, seniority and progression in that Department shall be determined solely by the terms of the applicable collective bargaining agreement.

## II. RATE PROTECTION—BOX, GROCERY AND MULTI-WALL BAG PLANTS

1. Where a Negro employee in the box plant, grocery bag plant or the multiwall bag plant:

a. Was an employee of the box plant, grocery bag plant or the multiwall bag plant prior to April 7, 1964, and

b. Is the successful bidder for transfer to a permanent opening in the entry job of a line of progression in the plant in which he was an employee prior to April 7, 1964 (for the purposes of this section, the unassigned groups in the box plant shall be considered the entry jobs for those lines leading from those unassigned groups), and

c. Said line contains one or more jobs with a Regular Job Rate (RJR) as defined below, higher than such employee's RJR, and

d. He accepts such entry job and transfer to that line, and

e. His RJR is higher than the RJR of said entry job, and

f. This is the first occasion subsequent to August 1, 1967, that such employee transfers to another line of progression, then he shall be paid his "Red Circle Rate" as defined below, in such new line of progression. This provision is applicable to all temporary positions filled by bid which must be held prior to obtaining the permanent position.

2. Such Red Circle Rate shall continue until such employee:

a. Progresses to a permanent job in the new line with a RJR higher than his Red Circle Rate, or

b. Refuses promotion, temporary or permanent, to a higher job, or

c. Is disqualified for promotion, temporary or permanent, to a higher job to which he would otherwise move, or

d. Chooses a branch of the progression line which will not lead to a job with a RJR higher than his Red Circle Rate, or

e. Requests termination of his Red Circle Rate; at which time said Red Circle Rate shall be terminated and thereafter such employee shall be paid on the regular contract basis for the job he performs.

3. Notwithstanding the provisions of the Labor Agreement, "Regular Job Rate" (RJR) in all cases means the average straight-time hourly earnings paid to the transferring employee in the job slot from which he transfers, as computed by the company and shown on the company's records for the calendar quarter immediately preceding the calendar quarter of the period in question.

4. "Red Circle Rate" as used herein means the RJR at the time of transfer for the employee's last permanent position prior to the transfer. Where an employee has

not applied for a transfer prior to the announcement of a cutback affecting the successful bidder, his Red Circle Rate, if any, shall be the Regular Job Rate of the job which he would have held after the cutback had been completed, if he had not transferred.

5. If, by shutdown or other event over which he has no control, an employee receiving a "Red Circle Rate" is "bumped" out of the line to which he has transferred, he may return to the position from which he transferred in accordance with his labor agreement rights and/or transfer to another line of progression in which the highest paying job exceeds the rate of the highest paying job in the line originally transferred from, in which latter event he shall retain his "Red Circle Rate," subject to ¶ 2 above. If an employee returns to his orginal progression line by virtue of being bumped out of the line originally transferred to, his rights under this paragraph shall be applicable to a subsequent transfer in accordance with this Section II.

## III. PRIORITY BIDDING

1. All present Negro employees who were assigned to the Corrugator Rod and Take-Off group in the box plant prior to April 7, 1964, and who are still so assigned, shall be offered promotions to the job of Slitter Worker on the 0201 corrugator in the Corrugator group, in accordance with their relative seniority in the Corrugator Rod and Take-Off group, before the position of Slitter Worker on the 0201 corrugator is advertised or offered to any other employee in the plant.

2. All present Negro employees who were assigned to Paster Group #2 in the box plant prior to April 7, 1964, and who are still so assigned, shall be offered the job of Slitter Worker in Paster Group #1, in accordance with their relative seniority within Paster Group #2, before the job of Slitter Worker in Paster Group #1 is advertised or offered to any other employee in the plant.

3. All present Negro employees who were assigned to the service job in the Over The Road Trucking Department prior to April 7, 1964, and who are still so assigned, shall be offered the job of Over The Road truck driver, in accordance with their seniority within the service job, before the job of Over The Road truck driver is advertised or offered to any other employee in the plant.

4. Nothing in this order shall require the company to grant any promotions to any employee who is not qualified to perform the work in question.

## IV. TESTING

1. Defendant Crown Zellerbach Corporation is hereby permanently enjoined and restrained from administering any personnel or aptitude test as a basis for employment at company's plants in Bogalusa or for promotion or transfer at the company's box, grocery bag or multiwall plants in Bogalusa, unless and until this Court determines, upon application of the company, that any such tests have been validated and proven valid in accordance with the requirements of the "Guidelines of Employee Selection Procedures" published by the United States Equal Employment Opportunity Commission, 35 Fed.Reg. 1233, August 1, 1970, as from time to time revised. This order does not prevent the company from applying and acting upon the results of reasonable ability demonstrations with respect to actual job content, such as the demonstration of typing ability by a prospective secretary or the demonstration of driving ability by prospective truck drivers, provided that any such demonstrations are fairly related to the requirements of the particular job in question and are reasonable in terms of the level of ability required to be demonstrated and in terms of the weight accorded to the results of these demonstrations in terms of overall employment decisions.

2. Defendant Crown Zellerbach Corporation is hereby permanently enjoined and restrained from conditioning promotion or transfer for any Negro employee employed prior to April 7, 1964, to any job that was, prior to that date, within the exclusive jurisdiction of the defendant Magic City Local 362, on fulfilling any test or formal educational requirement that was not applied prior to April 7, 1964, to white employees seeking assignment to such jobs, unless the incumbents in such jobs are or have been required to meet any such requirements as a condition for retaining their assignment to such jobs.

## V. COLLECTIVE BARGAINING AGREEMENT

Nothing in this Decree shall affect the validity, force or effect of any collective bargaining agreement or provision thereof, between the defendants, except insofar as it is inconsistent with this Decree.

## VI. ATTORNEYS' FEES

 Plaintiffs are awarded costs, including a reasonable attorneys' fee, in an amount agreed upon between the defendants and the plaintiffs. Liability among the defendants for their costs will be allocated in the manner agreed upon by the defendants.

## VII. TERMINATION

 If not terminated previously, all the provisions of this Decree shall finally cease and terminate ten (10) years from the date of this Decree unless, for good cause shown, the need to continue in effect some or all of the provisions of this Decree is demonstrated to the Court prior to said date.

## VIII. RELATION TO PREVIOUS ORDERS

With the exception of this Court's Order dated February 25, 1970, which governs the terms of merger of Local 362 and former Local 624, the previous orders granting relief to plaintiffs are hereby terminated except to the extent they are actually set forth above, but to the extent that they are set forth above and as they are otherwise limited by the provisions hereof, they are reaffirmed and continue in full force and effect.