**John H. MELE, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE et al., Defendants.**

**Civ. A. No. 74-1746.**

United States District Court,
D. New Jersey.

May 7, 1975.

John F. McMahon, Asst. Federal Public Defender, Newark, N. J., for plaintiff.

Bernard S. Davis, Deputy Chief, Civil Div., Newark, N. J., Michael S. Bokar, Deputy Atty. Gen., Dept. of Law and Safety, Labor and Industry Section, Trenton, N. J., for defendants.

## OPINION AND ORDER

WHIPPLE, Chief Judge.

■ This is a motion by the Equal Employment Opportunity Commission (EEOC), joined by the International Brotherhood of Electrical Workers Union No. 52 (IBEW), for an order dismissing the complaint for failure to state a claim upon which relief can be granted. For the purposes of this motion, all well-pleaded material allegations of the complaint will be taken as true. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Landy v. Federal Deposit Ins. Corp.,* 486 F.2d 139 (10th Cir. 1973), *cert. denied,* 94 S.Ct. 1979.

Plaintiff, a Caucasian job applicant, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, alleging employment discrimination. Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 2000e-5. Equitable and other relief are also sought under 42 U.S.C. § 2000e-5(g).

Plaintiff alleges that the defendants have failed to employ him

by using an illegal minority recruitment program which was involved in quota systems, proportional representation, and discrimination in reverse which is prohibited under executive order 11246-Title VII, Civil Rights Act of 1964.

The EEOC defends on the ground that the hiring system currently utilized by the IBEW is the product of a consent decree entered by this Court in *United States v. United Ass'n of Journeymen,* 364 F.Supp. 808 (D.N.J. 1973). The decree provides, *inter alia,* goals for minority membership within the IBEW in order to eradicate the effects of past discrimination. (Section IV of the Decree). It is, apparently, the utilization of these goals which has precipitated the present action.

In the "Charge of Discrimination" form attached to the complaint, plaintiff charges

that unjust quota systems were used in the hiring of 35 apprenticeship trainee positions of which 30 had to be minority applicants.

He further alleges that an illegal dual scoring standard was utilized in grading employment examinations. By Court decree in Civil No. 444-71, a quota had been established for future hiring. Of the next 35 persons hired, 30 would be members of minority groups and 5 would be non-minorities. Oral argument revealed that minority and white applicants took the same examination. The employer separated the minority group examinations from the rest and chose to employ those 30 minority applicants with the highest scores. The same system was used to select the 5 non-minority applicants. Plaintiff charges that since the examination was not validated pursuant to EEOC Guidelines, it is discriminatory *per se* and therefore invalid.

Title VII of the Civil Rights Act of 1964 makes it unlawful for any employer to discriminate as to hiring, firing, compensation, terms, conditions, or privileges of employment on the basis of race, color, religion, sex or national origin. Plaintiff, as a white male, alleges that the preferential hiring of minorities has the effect of discriminating against him in violation of Title VII. The defendants respond that the hiring practice upon which plaintiff predicates his claim of discrimination is valid since it follows the mandate of Executive Order No. 11246, by which the United States has undertaken to establish affirmative action plans to ensure equal opportunity.[1]

■ The affirmative action concept requires that an employee seeking to do

---

1. It is well established that Executive Orders have the force and effect of law. *Farmer v. Philadelphia Electric Co.,* 329 F.2d 3 (3d Cir. 1964); *Joyce v. McCrane,* 320 F.Supp. 1284 (D.N.J.1970).

business with the Federal Government do more than simply refrain from discriminatory practices and policies. It mandates that the employers must go beyond passive non-discrimination, by taking positive steps toward the elimination of employment barriers to minorities.[2]

■ District courts, sitting as courts of equity, possess the wide authority to fashion relief which will eradicate the effects of past discrimination. *Carter v. Gallagher*, 452 F.2d 315, 329 (8th Cir. 1972) (en banc). District court decrees that have established quota systems to eliminate such past discrimination have been consistently upheld.[3] *See Bridgeport Guardians, Inc. v. Civil Service Commission*, 482 F.2d 1333 (2d Cir. 1973); *Carter v. Gallagher, supra; Contractors Association of Eastern Pa. v. Secretary of Labor*, 442 F.2d 159 (3d Cir. 1971), *cert. denied*, 404 U.S. 854; *Porcelli v. Titus*, 431 F.2d 1254 (3d Cir. 1970).

■■ The Third Circuit, in *Contractors Association of Eastern Pa. v. Secretary of Labor, supra*, considered such an affirmative action program and found no inherent conflict between the limitation on quota hiring in Title VII of the 1964 Civil Rights Act and the requirements of minority hiring goals for federal construction contracts. The Title VII limitation on quota hiring was held to apply only to the Civil Rights Act, and it did not prevent the President, acting through the Executive Order program, from requiring federal contractors to comply with minority hiring goals. The plan in question was found to be a valid exercise of executive action designed to remedy the perceived evil stemming from past exclusion of minority tradesmen from the labor pool available for the performance of construction projects in which the federal government had an interest. *See Joyce v. McCrane*, 320 F.Supp. 1284 (D.N.J. 1970).

This Court, therefore, after careful reconsideration of the consent decree in question, finds that it was entered in conformity with existing law and is a valid exercise of this Court's equitable power.

More troublesome to the Court, however, is the plaintiff's contention that since the employment test in the present case was not validated by the employer, it is discriminatory *per se*. Since plaintiff is not a member of a minority group, his application presents the novel issue of whether a non-minority plaintiff possesses the capacity to invoke the employment guideline provisions of 29 C.F.R. § 1607.1 *et seq*.

The use of employment examinations, which are defined by EEOC as "any paper-and-pencil or performance measure used as a basis for any employment decision" and "all formal, scored, quantified or standardized techniques of assessing job suitability . . . ," has been the subject of considerable controversy in fair employment law. 29 C.F.R. § 1607.-2. Title VII expressly provides that an employer may administer and act upon

---

2. The principle underlying the presidential authority to mandate non-discrimination by contractors is found in the power of the United States Government to establish conditions with which anyone desiring to do business with the Government must comply. *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1969); *Perkins v. Lukens Steel*, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940).

3. The Court in *Carter v. Gallagher*, 452 F.2d 315 (8th Cir. 1972) (en banc), relying upon *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 25, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971) stated:

It has now been established by the Supreme Court that the use of mathematical ratios as "a starting point in the process of shaping a remedy" is not unconstitutional and is "within the equitable remedial discretion of the District Court." 452 F.2d at 331.

the results of any professionally developed ability or psychological test, so long as the test is not used to discriminate against women and minority group members. The EEOC, in its *Guidelines on Employee Selection Procedures,* has defined discrimination as follows:

> The use of any test *which adversely affects hiring, promotion, transfer or any other employment or membership opportunity of classes protected by title VII* constitutes discrimination unless: (a) the test has been validated and evidences a high degree of utility as hereinafter described, and (b) the person giving or acting upon the results of the particular test can demonstrate that alternative suitable hiring, transfer or promotion procedures are unavailable for his use.

29 C.F.R. § 1607.3 (emphasis added). It is clear from the above language that the EEOC places heavy weight on validation by equating an unvalidated test that adversely affects "classes protected by title VII" with discrimination *per se* when the employer had the option to use other selection procedures.

██ Lower federal courts have split on the question of whether an unvalidated test constitutes discrimination *per se.* For example, in *United States v. H. K. Porter Co.,* 296 F.Supp. 40, 76–77 (N.D. Ala.1968), the court stated that

> to find racial discrimination . . . there should be at least some evidence that the use of an aptitude test which has not been validated has resulted in discrimination and not merely the abstract proposition that test validation is desirable.

However, in *Hicks v. Crown Zellerbach Corp.,* 319 F.Supp. 314, 319 (E.D.La. 1970), *modified,* 321 F.Supp. 1241 (E. D.La.1971), an action brought by blacks who alleged that they were adversely ef-

fected by the tests utilized by an employer, the court adopted the "discrimination *per se*" rule when it declared:

> Since it is clear that Crown Zellerbach has engaged in no significant study to support its testing program, the program is unlawful.

The question was apparently settled by the United States Supreme Court in *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), when it stated:

> What Congress has forbidden is giving these devices and mechanisms controlling force unless they are *demonstrably* a reasonable measure of job performance.

401 U.S. at 436, 91 S.Ct. at 856 (emphasis added). The Court placed the burden of proof concerning job-relatedness on the employer. Since the only method of demonstrating job-relatedness is by conducting a validity study, it appears that the Court has, in effect, adopted the "discrimination *per se*" rule found in *Hicks.*[4]

Despite the fact that an unvalidated test constitutes discrimination *per se,* it is the holding of this Court that the plaintiff herein, since he is not a member of the class protected by Title VII, may not invoke the protection of the EEOC Guidelines.

██ It is clear from 29 C.F.R. § 1607.1(a) that the purpose of the EEOC Guidelines is to "significantly contribute to the implementation of non-discriminatory personnel policies, as required by Title VII." In order for a test to be discriminatory the use of the test must first "adversely affect the hiring, promotion, transfer or any other employment or membership opportunity *of classes protected by Title VII.*" 29 C.F. R. § 1607.3. Congress' intent in enacting Title VII is clear from the language of the statute. "It was to achieve equality

4. For an excellent discussion of *Griggs* and related issues, see Note, *Restricting the Use* of *General Aptitude Test as Employment Criteria,* 3 Seton Hall L. Rev., 143 (1971).

of employment opportunities and remove barriers that have operated in the past to favor an identified group of white employees over other employees." 401 U.S. at 429–30, 91 S.Ct. at 853. The persons protected under Title VII are those minority group members who have traditionally been the targets of discrimination by labor unions.

 Plaintiff in this action has not alleged that the questioned examination adversely affected the employment rights of minority applicants; only that the tests served to discriminate against him. Surely it cannot be said that Congress, by enacting Title VII, intended to protect those white males who have traditionally dominated the labor unions. Plaintiff has failed to satisfy the requirements of section 1607.3 and therefore his claim of discriminatory testing must be dismissed.

This Court is not unsympathetic to the plaintiff's plight and recognizes the seeming inequities imposed upon him by reason of affirmative action. However, such affirmative action programs have been held to constitute a valid exercise of executive power and this Court is duty bound to follow the Federal policy in favor of overcoming the effects of past discrimination by means of affirmative action.

In light of the above, it is the holding of this Court that the consent decree in the present case was a proper exercise of this Court's equitable power to fashion a remedy and is therefore valid. Furthermore, plaintiff has failed to satisfy the requirements set forth in the EEOC Guidelines for a showing of discrimination. The defendant's motion for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) are therefore granted. Although the defendant, New Jersey State Department of Labor, did not join in this motion, the Court hereby dismisses the complaint, *sua sponte*, for the same reasons set forth above.

No costs to any parties.

So ordered.