**BROWN, Adm'r, Office of Price Administration, v. WINTER.**
**Civil Action No. 518.**

District Court, W. D. Wisconsin.
July 20, 1943.

Bruno V. Bitker, Chief Counsel, and Lee K. Bezuor, Dist. Enforcement Atty., both of Milwaukee, Wis., and Floyd E. Wheeler Chief Atty., Madison Defense-Rental Area Office, of Madison, Wis., for plaintiff.

George A. Solsrud and Hill, Beckwith & Harrington, all of Madison, Wis., for defendant.

STONE, District Judge.

In this action plaintiff seeks a preliminary injunction to restrain defendant from violating the maximum rent regulation No. 45 issued by the plaintiff pursuant to the provisions of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq. The complaint alleges that the defendant has violated Regulation No. 45 in that she wrongfully demanded and received rents in excess of the maximum amount fixed under the provisions of the regulation; that she unlawfully evicted tenants; that she filed false registration certificates relative to the housing accommodations of the property in question, and otherwise violated said regulation.

Defendant moved for an order dismissing the complaint and denying plaintiff's motion for a preliminary injunction on the ground that the Emergency Price Control Act of 1942, as amended, which authorizes the adoption of the regulation referred to by the Price Administrator, is unconstitutional in that it provides for an unwarranted delegation of legislative powers of Congress in violation of Section 1 of Article I of the United States Constitution; that it contravenes the Fifth and Fourteenth Amendments to the Constitution in that the rents are fixed by the plaintiff without notice or hearing; that the Act impairs the obligation of a contract and deprives defendant of property rights without due process of law.

■ It clearly appears from the provisions of the Act that there was no invalid delegation of Congressional powers. The statute, not in general terms, but in clear and concise language, embodies the policy of Congress with respect to the subject matter, and also a standard of administration of the provisions of the Act, which are requirements of valid legislation that defendant contends are lacking in the statute.

Opp Cotton Mills v. Administrator, 312 U.S. 126, 657, 61 S.Ct. 524, 85 L.Ed. 624; Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263; United States v. Rock Royal Co-operative, Inc., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446.

The legislative policy is definitely expressed in Section 901(a), 50 U.S.C.A.Appendix, § 901(a) (Section 1(a) of the Act), which is, in part, as follows: "(a) It is hereby declared to be in the interest of the national defense and security and necessary to the effective prosecution of the present war, and the purposes of this Act are, to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; to assure that defense appropriations are not dissipated by excessive prices; to protect persons with relatively fixed and limited incomes, consumers, wage earners, investors, and persons dependent on life insurance, annuities, and pensions, from undue impairment of their standard of living; to prevent hardships to persons engaged in business, to schools, universities, and other institutions, and to the Federal, State, and local governments, which would result from abnormal increases in prices; to assist in securing adequate production of commodities and facilities; to prevent a post emergency collapse of values * * *".

50 U.S.C.A.Appendix, § 902, embodies definite standards which the Administrator must follow in determining the localities in which the rent regulations shall be effective. It also provides an exact formula that he must adopt in the preparation of the recommendations and regulations relating to the rental terms in the defense rental area. Congress has empowered the Administrator to administer the provisions of the Act and vests in him a discretion that permits of a sensible and practicable enforcement of the statute.

■■ The contention of the defendant that her rights under the Fifth and Fourteenth Amendments to the Constitution have been violated in that the rents were fixed without notice to her and without hearing, thereby depriving her of property rights without due process of law, is not

supported in law. The establishment of a maximum rent is a quasi-legislative function, rather than quasi-judicial, since such regulation operates prospectively and establishes rules of general conduct binding upon many persons. There is no Constitutional requirement of a hearing prior to or in connection with this exercise of a quasi-legislative function. Bi-Metallic Inv. Co. v. State Board of Equalization of Colorado, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372; Buttfield v. Stranahan, 192 U.S. 470, 24 S.Ct. 349, 48 L.Ed. 525.

The Act is not unconstitutional on the grounds that it impairs the obligation of a contract. In Norman v. Baltimore & Ohio R. Co., 294 U.S. 240, 55 S.Ct. 407, 417, 79 L.Ed. 885, 95 A.L.R. 1352, the Court said: "There is no constitutional ground for denying to the Congress the power expressly to prohibit and invalidate contracts although previously made, and valid when made, when they interfere with the carrying out of the policy it is free to adopt." In that case the Court approved the abrogation, by the joint resolution of Congress of June 5, 1933, 31 U.S.C.A. §§ 462, 463, of a pre-existing contract for the payment in gold of the amount due on bonds issued by the defendant.

Enjoining a landlord from exacting the highest rent from a tenant in a defense area during the present crisis does not constitute the taking of property without just compensation. The property owner's rights are subject to regulation by Congress, and any loss resulting from such regulation is consequential. Morrisdale Coal Co. v. United States, 259 U.S. 188, 42 S.Ct. 481, 66 L.Ed. 892; Jacob Ruppert, Inc., v. Caffey, 251 U.S. 264, 40 S.Ct. 141, 64 L.Ed. 260; Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165.

The Emergency Price Control Act in question is based on Section 8 of Article I of the Constitution of the United States which includes the powers conferred upon Congress to declare war and to make all laws necessary and proper for carrying that express power into execution. The statute was enacted on January 30, 1942, shortly after "Pearl Harbor", with the express statement that it was necessary to the effective prosecution of the present war. The power of Congress to enact drastic legislation to meet the emergency of war, which would be wholly improper in times of peace, is tremendous. Prices of food, rent, and other necessities of life may be fixed and regulated by Congress under the war clause of the Constitution. United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302.

Speaking of the war powers of the Federal Government, Chief Justice Hughes, in Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 235, 78 L.Ed. 413, 88 A.L.R. 1481, said: "It is a power to wage war successfully, and thus it permits the harnessing of the entire energies of the people in a supreme co-operative effort to preserve the nation."

The enactment of the Emergency Price Control Act of 1942, as amended, was a valid exercise of the powers of Congress, and violates no provision of the United States Constitution or amendment thereto.

Defendant's motion to dismiss the complaint is denied. Plaintiff's motion for preliminary injunction is granted, with costs. Let judgment be entered accordingly.