J. Vincent **O'NEILL**, Appellant,

v.

**CORPORATE TRUSTEES, INC.,**
Appellee.

No. 23898.

United States Court of Appeals
Fifth Circuit.

April 25, 1967.

John H. Wahl, Jr., Laurence A. Schroeder, Miami, Fla., Walton Lantaff Schroeder Carson & Wahl, Miami, Fla., of counsel for appellant.

Harold L. Ward, Miami, Fla., Fowler, White, Collins, Gillen, Humkey & Trenam, Miami, Fla., of counsel for appellee.

Before COLEMAN and DYER, Circuit Judges, and ESTES, District Judge.

ESTES, District Judge:

Appellant, J. Vincent O'Neill, appeals from the entry of a summary judgment in favor of the appellee, Corporate Trustees, Inc., in a suit brought by appellant, O'Neill, for breach of contract for purchase of appellant's stock in the Boulevard National Bank of Miami, Florida (Boulevard Bank).

The pleadings, affidavits and depositions show the following undisputed facts:

Appellant, O'Neill, was president of the Boulevard Bank, and prior to August 2, 1965, he owned 36 shares of stock in the Boulevard Bank; and he had a stock-option agreement with the directors of the Boulevard Bank running from May 22, 1961, to May 22, 1966, granting him the option to purchase 1,000 shares of such stock at $50 a share and an additional 1,000 shares at $70 a share.

On June 23, 1965, James B. Allen, Jack L. Ray, Kenneth J. Fowler, and Doc Fowlkes (Allen, et al), predecessors-in-interest of appellee, Corporate Trus-

tees, Inc., agreed to purchase a majority of the outstanding shares of Boulevard Bank from The Mackle Company, Inc., Sidney Alterman, and Michael O. O'Neil [1] (Sellers), who were the record owners of such majority stock. This agreement provided in part that:

"[Allen, et al] will make an offer to purchase the outstanding shares of stock of Boulevard [Bank] from the owners or holders thereof * * * for a * * * price of $85.00 per share; and [Allen, et al] will transmit to each stockholder of record * * * a tender and/or offer to purchase, which shall be in the form Exhibit 'I', attached hereto. * * *"

The material parts of the aforesaid Exhibit "I" read:

"August 2, 1965

"TO THE STOCKHOLDERS OF BOULEVARD NATIONAL BANK OF MIAMI (Who held and were the record owners of stock as of the close of business on June [23] 1965):

"[Allen, et al], (Offerors), hereby offer to purchase all or part of the $30.00 par value common stock of Boulevard National Bank of Miami at a net cash price of $85.00 per share."

On August 2, 1965, appellant, O'Neill, received an offer in the form of Exhibit "I," set forth above, except that "Corporate Trustees, Inc., an Alabama corporation, (offeror)" was used in place of the names of the individual offerors, Allen, et al. On September 1, 1965, O'Neill exercised his option to purchase the 2,000 option shares at an average price of $60 per share, and he then made demand on Corporate Trustees, Inc., for its purchase of the stock at $85 a share. Corporate Trustees, Inc. declined to purchase the shares appellant acquired under the stock option, denying any obligation of appellee to purchase appellant's option stock which he did not own of record on June 23, 1965.

Both appellant and appellee filed motions for summary judgment on April 8, 1966. On April 27, 1966, the court

---

1. Michael O. O'Neil is no relation to appellant, J. Vincent O'Neill.

granted a Final Summary Judgment in favor of appellee, Corporate Trustees, Inc., and against appellant, J. Vincent O'Neill, briefly reciting the facts and stating that there is no ambiguity in the offer dated August 2, 1965, and such offer did not include appellant's option stock. The court reasoned, however, that if the offer could be construed as being ambiguous, then the appellant at all times knew the offer was not intended to include his option stock.

■■ Appellant contends that there is a genuine issue of material fact as to appellee's intent in making its offer of August 2, 1965, and appellant's knowledge of that intent. We do not agree.

In Florida, it is well settled that:

"In order that there be a contract, the parties must have a definite and distinct intention, common to both, and without doubt or difference. Until all understand alike, there can be no assent, and therefore no contract. Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms." Webster Lumber Co. v. Lincoln (1927) 94 Fla. 1097, 115 So. 498, 502. Accord: Enid Corp. v. Mills (Fla., 1958), 101 So.2d 906; Minsky's Follies of Florida v. Sennes (5 Cir., 1953), 206 F.2d 1; Truly Nolen, Inc. v. Atlas Moving & Storage Ware., Inc. (Fla., 1961), 125 So.2d 903; Fincher v. Belk-Sawyer Co. (Fla., 1961), 127 So.2d 130.

It is undisputed that appellant, O'Neill, first saw the June 23, 1965, agreement on July 17, 1965. After seeing the agreement, O'Neill discussed the matter with seller Sidney Alterman. Alterman wrote a letter dated July 17, 1965, to seller Michael O'Neil, indicating the nature of his conversation with appellant, J. Vincent O'Neill. Portions of the letter are as follows:

"* * * [M]y opinion is that we have a serious problem with Vince [appellant, J. Vincent O'Neill] and it was indicated to * * * me that he feels that he should be paid $50,000.00 for his stock option agreement with the nine (9) directors. * * * He further feels that the [June 23, 1965] contract has no right to the stipulation calling for purchase by [Allen, et al] from 'stockholders of record, June * * *, 1965.' [Appellant, O'Neill] has indicated * * * to me that he may seek injunctive action."

On deposition, appellant, O'Neill, testified that the letter set forth above was accurate and correct; that he considered the agreement of June 23, 1965, which "ignored the stock option agreement" to be an "outrage," and for that matter, still considered it an "outrage"; that before August 2, 1965, he asked the attorney who drafted the agreement of June 23, 1965, whether such agreement was to include appellant's option to buy stock; and that the attorney advised appellant that the option stock was not covered.

■ The record establishes without genuine dispute that appellant understood the agreement of June 23, 1965, did not cover his option stock. Hence, when the offer of August 2, 1965, was made pursuant to the agreement of June 23, 1965, there was no assent by the parties to any agreement between them for the purchase and sale of appellant's 2,000 shares of option stock.

Appellant's contention that the trial court committed reversible error by the inclusion and subsequent deletion of language referring to appellant, J. Vincent O'Neill, rather than Michael O'Neil, as a Seller under the June 23rd agreement is not material and is without merit.

There is no genuine issue as to any material fact, and appellee is entitled to judgment as a matter of law. Rule 56(c) F.R.Civ.P.

The trial court's judgment is

Affirmed.