**PLUMBERS LOCAL UNION NO. 519 et al., Plaintiff,**

**v.**

**CONSTRUCTION INDUSTRY STABILIZATION COMMITTEE and John T. Dunlop, as Chairman of the Construction Industry Stabilization Committee, Defendants.**

Civ. No. 72–811.

United States District Court,
S. D. Florida.

Oct. 13, 1972.

Joseph H. Kaplan, Miami, Fla., for plaintiff.

Edward Lenz, Dept. of Justice, Washington, D. C., Raymond B. Ray, Asst. U.S. Atty., Miami, Fla., for defendants.

Leo M. Alpert and Jonathan L. Alpert, Miami, Fla., for intervenors.

## ORDER

ROETTGER, District Judge.

Plaintiff labor organization, Plumbers Local Union No. 519, filed a motion for preliminary injunction against the Construction Industry Stabilization Committee (CISC) and its chairman to enjoin the Committee from prohibiting the escrowing of a negotiated wage increase pending the outcome of its suit challenging the validity of the Committee's disapproval of a portion of the increase. In substance, the motion alleged that plaintiff entered into a collective bargaining agreement effective April 16, 1970 with the employer association, the Plumbing Industry Program, Inc. (PIP), which provided that on October 16, 1971, wages would be increased $1.00 per hour and the pension fund contribution increased 50 cents per hour.

On April 13, 1972, the Committee disapproved the increases retroactive to October 16, 1971, but authorized a wage and fringe increase of 40 cents per hour. The collective bargaining agreement further provided for an additional increase of 65 cents per hour effective April 16, 1972. On May 26, 1972, the Committee disapproved the 65 cent increase but allowed an additional 40 cent per hour wage increase in addition to the 40 cent increase previously allowed.

Plaintiff, in the main suit, challenges the validity of the Committee's action in disapproving the wage increases contractually agreed upon by plaintiff and the PIP. Plaintiff, by letter dated May 19, 1972, demanded that all signatory employers place all of the negotiated wage increases in escrow. Shortly thereafter, on May 26, 1972, the Committee notified plaintiff that the proposed escrow arrangement was prohibited by the Committee.

The CISC permits escrow of wages pending its determination but does not permit escrow of disallowed increases. Plaintiff challenges this distinction as arbitrary and capricious. Relying on the Committee's letter, the employer signatories have refused to place the negotiated wage increases in escrow. Plaintiff, by motion, now seeks to enjoin the Committee from prohibiting the escrow of the negotiated increases. At the same time, the PIP has filed a motion to intervene and the motion to intervene is hereby granted.

There is no dispute among the parties as to the facts. The Court has tested the facts against the criteria of: 1) irreparable harm to plaintiff unless the preliminary relief is granted; 2) absence of substantial harm to the defendant; 3) absence of harm to the public interest; and 4) the likelihood that plaintiff will prevail on the merits of the case. King v. Saddleback Jr. College Dist., 425 F.2d 426, 427 (9th Cir.

1970). The Court is also aware that, in exercising its discretion, the power to grant injunctive relief should be used sparingly, cautiously, and only where the necessity for such relief is clear. Braswell Motor Freight, Inc. v. United States, 297 F.Supp. 215, 221 (S.D.Miss.1969).

In dealing with the first of the criteria listed above, plaintiff has failed to show irreparable injury if the motion is not granted. The general rule is that an injury is irreparable when it cannot be adequately compensated for in damages. Washington Capitols Basketball Club, Inc. v. Barry, 304 F.Supp. 1193 (N.D.Cal.1966), aff'd 419 F.2d 472 (9th Cir. 1969); Local Union 499 of IBEW v. Iowa Power & Light Co., 224 F.Supp. 731, 738 (S.D.Iowa 1964); 43 C.J.S. Injunctions § 23. Plaintiff readily concedes that it can receive backpay from the PIP should it succeed on the merits. What plaintiff asserts as irreparable is the likelihood that the employers will be unable financially to meet the burden of millions of dollars of backpay should plaintiff's suit succeed. Since plaintiff, if successful, may be compensated in money damages, the fact that the defendant may be unable to pay such damages does not, in and of itself, make the injury "irreparable." American Shipbuilding Co. v. McManigal, 65 F.Supp. 297 (W.D.N.Y.1946); Luckenbach S. S. Co., Inc. v. Norton, 21 F.Supp. 707 (E.D.Pa. 1937).

Further, in determining whether to grant or deny the preliminary injunction the Court has sought to balance the relative convenience of the parties and possible injury to them by the grant or denial of temporary relief. Nalco Chemical Co. v. Hall, 347 F.2d 90, 92 (5th Cir. 1965). In weighing the possibility of injury to plaintiff against the possibility of injury to the CISC, the scales seem heavily weighted in favor of the Committee.

The Economic Stabilization Act of 1970 was the end result of deep concern by the executive and legislative branches of the federal government over inflation. *See* Report of the House Committee on Banking and Currency, H.R. Rep. No. 91–1330. In particular, the Construction Industry Stabilization Committee was created to curb inflation in a sector of the economy where an ever increasing inflationary spiral was not only particularly evident but increasingly harmful to our economic situation. Faced with the particular problem of escrowing of amounts prohibited by the wage-price freeze, the Committee determined that negotiated increases not yet approved by the Committee could be escrowed. Pay Board Ruling No. 34 (37) F.R. 9350, May 9, 1972. However, neither the wage increase provided for in the collective bargaining agreement, nor the wage increase approved by the Committee could be escrowed. Letter from D. Quinn Mills, Secretary, CISC, to S. W. Long, Business Manager, Plumbers Local 519, dated May 26, 1972.

It is, of course, well established that an agency's construction of its own rules and regulations is given great weight on judicial review. United States v. Lieb, 462 F.2d 1161 (Em.App.1972). The Committee "know[s] better than most the causes of inflation, [and] the reasons for the freeze . . ." and the Court will not second guess the action of the Committee in disallowing the escrowing of wage increases disallowed by the Committee. Univ. of So. Cal. v. Cost of Living Counsel & Office of Emergency Preparedness, —— F.2d —— T.E.C.A. No. 9–1 (Sept. 18, 1972).

Moreover, it appears that the granting of the preliminary injunction will adversely affect the public interest. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944). The Court cannot but notice the importance of a stable economy for all citizens of the United States and, as defendant CISC points out, escrowing could result in banks lending amounts far in excess of amounts regularly escrowed (a multiplier effect), resulting in enormous monetary expansion adverse to the attempt to slow the rate of inflation. The decision is peculiarly one within the executive branch, acting under the legislative au-

thorization, and plaintiff has failed to show any abuse on the part of CISC sufficient for judicial interference.

 Equity has always viewed the preliminary injunction as a device to maintain the status quo pending a determination of the case in chief. Exhibitors Poster Exch. v. Nat'l Screen Serv. Corp., 441 F.2d 560 (5th Cir. 1971); Miami Beach Fed. S & L Ass'n v. Callander, 256 F.2d 410 (5th Cir. 1958); Community Natural Gas Co. v. City of Cisco, 65 F.2d 320 (5th Cir. 1933). Plaintiff, however, seeks not to maintain the status quo, but to change it. Further, where the purpose of the injunction is not to maintain the status quo, it must appear that the injury is imminent. Congress of Racial Equality v. Douglas, 318 F.2d 95, 100 (5th Cir. 1963), cert. denied, Burt v. Congress of Racial Equality, 375 U.S. 829, 84 S.Ct. 73, 11 L.Ed.2d 61 (1963); Community Natural Gas Co. v. City of Cisco, *supra*. But here plaintiff's injury would not arise until such time as execution of future judgments against signatory employers was not satisfied. In this same vein, while it is not a ground for the denial of preliminary relief, the Court has ordered that the trial on the merits shall proceed as soon as possible.

On the foregoing grounds, it is Ordered and Adjudged that the motion for preliminary injunction is hereby denied. *See* Order of J. Pregerson dated October 10, 1972, in United States of America v. IBEW, Local No. 11, Case No. 72–1889 (C.D.Cal). It is therefore unnecessary to consider the likelihood of plaintiffs prevailing on the merits in determining whether the injunction should issue.

 One question remains for the Court. It appears that amounts previously approved by the Committee are being held in escrow and have not been paid to the employees entitled to them. At the hearing, plaintiff asserted that while it wished its members could receive such sums, it could not permit payment by the PIP of such sums for fear of being prejudiced in the instant case and because of its uncertainty as to the effect of such an acceptance on its otherwise valid contract. Intervenor PIP asserts its continued willingness to pay the approved wage increases. It appears that the CISC refuses to approve a contract for wages until the parties to the agreement agree to the new wage terms authorized by the CISC. It is implicit in both Pay Board Ruling 34 and Section 201.17 of the Pay Board Regulations that payments approved by CISC may be made.

What, in substance, the CISC proposes to do by requiring the contracting parties to agree to the CISC approved wage as part of their pre-existing contract is to rewrite the contract for the parties. Congress may invalidate contracts when they interfere with congressional policy, but not even legislative, much less administrative pressure, can coerce parties into assenting to the terms of a contract rewritten to suit governmental notions of fair play. Norman v. Baltimore & Ohio R. Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935), cited in Brown v. Winter, 50 F.Supp. 804, 806 (W.D.Wis. 1943) (invalidating contracts); O'Neill v. Corporate Trustees, 376 F.2d 818 (5th Cir. 1967) (contractual requirement of mutual assent).

Thereupon, it is further Ordered and Adjudged that the 40 cents per hour wage increase approved by the CISC effective October 16, 1971 and the additional 40 cents per hour wage increase effective April 16, 1972 shall be paid immediately to the respective employees entitled to such wage increases. Such payment to the plaintiff's members by the PIP shall in no way prejudice the rights of plaintiff or the PIP either in this Court or before defendant CISC.

The motion for preliminary injunction is hereby denied except for the increases authorized by the CISC under the conditions contained in this Order.