ERIE HUMAN RELATIONS COMMIS-
SION et al., Plaintiffs,

v.

Hon. Louis J. TULLIO, Mayor of the
City of Erie, et al., Defendants.

Civ. A. No. 30–73 Erie.

United States District Court,
W. D. Pennsylvania.

July 12, 1973.

Norman J. Watkins, Erie County Legal Services, Erie, Pa., for plaintiffs.

Lawrence L. Kinter, City Sol., Erie, Pa., for defendants.

OPINION

WEBER, District Judge.

Prior proceedings in this case have involved a complaint alleging unlawful racial discrimination in the recruiting, testing and hiring of applicants for the position of police officer in the City of Erie Police Department. A temporary restraining order to stay pending testing proceedings was sought and granted. A hearing was set on plaintiffs' prayer for preliminary injunction but no hearing was held because the parties stipulated to the essential facts which the court would be required to find to support the preliminary injunction.

The parties could not stipulate to the form of relief to be awarded because the defendants considered themselves bound by the method of selection mandated by the state civil service statutes unless mandated by an order of this court to proceed otherwise.

This consideration was the genesis of this lawsuit. As was revealed in the testimony and arguments before this court the City of Erie was under threat of action by the state authorities to compel the ending of de facto racial segregation in its police department and was also under the inducement of a grant of state funds which would enable it to hire twenty additional police officers at once over and above the complement authorized by its normal budget allocation.

This court did not discover the discrimination but the unrebutted evidence produced at the hearing confirmed its long standing existence. It is agreed that such discrimination as is revealed by the statistics is not the result of in-

tentional actions on the part of the City or the named defendants.

As a result of the temporary restraining order the unconstitutional standards and the discretionary provisions of the civil service rules have been eliminated. These provisions and the discretionary application of standards provided an avenue of potentially discriminatory hiring practices.

Given the factual situation of a past pattern of almost negligible representation of black citizens on the police department of the City of Erie for many years, and the present opportunity to cure that under-representation the court had little leeway in forming the remedy. A statistical ratio of black representatives on the police force consistent with the black population would provide fifteen members. There are at present three black members, only one of which was hired within the past ten years. The unusual opportunity of the City to hire twenty additional police officers by virtue of the state grant provides the vehicle. In drawing an analogy from the school cases, even though a public body may have done nothing to create a pattern of segregation, nevertheless, when an opportunity for change is presented it must proceed in a fashion that will reduce the previously existing discrimination. See Bradley v. Milliken, 345 F.Supp. 914 [E.D.Mich.S.D.1972], aff'd. 6th Cir. December 8, 1972; United States v. Texas Education Agency, 467 F.2d 848 [5th Cir. 1972]; Davis v. School District of City of Pontiac, 443 F.2d 573 [6th Cir. 1971]; Spangler v. Pasadena City Board of Education, 311 F.Supp. 501 [C.D.Cal.1970].

The temporary restraining order was issued in this case because of the threat of irreparable harm because if the existing procedures were followed with their potential of continuing the prior pattern of discrimination, the possibility of remedy would be lost for many years. Only an immediate remedy could cure the existing racial imbalance.

The immediate remedy urged by the plaintiffs was that one qualified black candidate be hired for each qualified white candidate until ten black candidates were so hired, in order that the racial representation on the city police force be brought into a rough approximation of conformity of the racial representation in the city. This was the solution reached in Commonwealth of Pennsylvania v. O'Neill, 348 F.Supp. 1084 [E.D.Pa.1972], aff'd. 3rd Cir. 1973, 473 F.2d 1029, and in this court in Commonwealth of Pennsylvania v. Sebastian, [Civil Action No. 72–987, W.D.Pa. November 30, 1972], aff'd. by order 3rd Cir. June 7, 1973, and in Carter v. Gallagher, 452 F.2d 315 [8th Cir. 1971].

In their motion to dissolve or modify the order entered the defendants urge this court either to vacate the ratio hiring clause or in the alternative to reduce the one-for-one ratio to a two-for-one or some other lower ratio. Such a solution must be rejected because if a two-for-one or lower ratio is employed the twenty positions to be filled would not provide a cure for the existing imbalance but rather would extend it for a long period in the future. An even more unacceptable proposal must be rejected, the hiring of the highest ten on the list of eligibles (which is reported in argument to include one black) and thereafter the hiring of sufficient blacks to supply a quota of ten. Such a proposal contains an overt pattern of discrimination because there is no guarantee that the city will continue to employ twenty additional police officers from its own budgetary resources, and a reduction of force is extremely likely when the state funds are no longer provided, resulting in the discharge of the officers with least seniority.

The quota system has been called "reverse discrimination" and it may be properly so labeled. Like the infections in the human body which are cured by injections of the same poison, the antitoxin of reverse discrimination is a rec-

ognized judicial remedy for the toxin of discrimination.

"The Constitution is both color blind and color conscious. To avoid conflict with the equal protection clause, a classification that denies a benefit, causes harm, or imposes a burden must not be based on race. In that sense, the Constitution is color blind. But the Constitution is color conscious to prevent discrimination being perpetuated and to undo the effects of past discrimination. The criterion is the relevancy of color to a legitimate governmental purpose." United States v. Jefferson County Board of Education, 372 F.2d 836, 876 [5th Cir. 1966] aff'd. and corrected en banc 380 F.2d 385 [5th Cir. 1967].

"[a]s a method of presently eliminating the effects of past racial discriminatory practices and in making meaningful in the immediate future the constitutional guarantees against racial discrimination, more than a token representation should be afforded." (p. 331). Carter v. Gallagher, 452 F.2d 315 [8th Cir. 1971].

There is a compelling public interest in preventing the perpetuation of discrimination or undoing the effects of past discrimination. Therefore, the consideration of a racial quota in making appointments to the police department is not a form of invidious discrimination since the goal of this policy is not to promote segregation but rather to achieve integration. Minorities must live within the rule of law and are entitled to representation within the law enforcement system. See DeFunis v. Odegaard, Wash.1973, 507 P.2d 1169.

The use of mathematical ratio is a recognized "starting point in the process of shaping a remedy" and is within the equitable remedial discretion of the District Court. Swann et al. v. Charlotte-Mecklenburg Board of Education et al., 402 U.S. 1, 25, 91 S.Ct. 1267, 1280, 28 L.Ed.2d 554 [1971].

The remedy ordered herein is not a quota system of permanent application.

It will apply only until there is a fair approximation of minority representation consistent with the population mix in the area. As soon as the court's order is fully implemented, all hirings may proceed on a racially nondiscriminatory basis. See Carter v. Gallagher, *supra*, p. 330 of 452 F.2d.

The court has retained jurisdiction of this matter to oversee the implementation of the procedures agreed to in the stipulation of the parties. While the constitutionally objectionable procedures in the application and testing process have been largely remedied by the stipulation, and the present reservoir of eligible candidates are the result of the revised procedures, one specific allegation has not been the subject of fact finding. An allegation was made that the present tests are culturally biased. At the hearing on the temporary restraining order a written report of a proposed expert witness was offered and rejected by the court because of the unavailability of its author to testify and undergo cross-examination. It was contemplated that this expert witness would be produced for the hearing on the preliminary injunction. No such hearing was held because of the stipulation, but the defendants agreed to seek for and employ an examination validated for the exclusion of cultural bias when such should become available.

Thus we have at present a preliminary injunction aimed solely at eliminating the present racial imbalance of the police department. No other adequate form of remedy than the formula adopted therein was proposed, nor did it appear that there was any objection to that formula by the defendants at the time in view of their desire to have the court determine the nature of the affirmative relief to be granted in recognition of the doctrine that the court may suspend the operation of valid state laws where the potential of discriminatory application is present. Louisiana v. United States, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 [1965] ; Carter v. Gallagher, *supra*.

The argument that the Erie Human Relations Commission is not a proper party-plaintiff we have considered before and rejected. Its reconsideration at this time is unnecessary because other plaintiffs are present both in their own behalf and in a representative capacity to sustain this suit.