Pedro **CASTRO** et al.

v.

Nancy B. **BEECHER**, and the Town
of Milton et al.

Civ. A. No. 74–2982–C.

United States District Court,
D. Massachusetts.

Jan. 7, 1975.

**1282**

Paul A. Good, Asst. Atty. Gen., Boston, Mass., for defendants.

Thomas A. Mela, Patrick King, Boston, Mass., for plaintiffs.

## OPINION

CAFFREY, Chief Judge.

This case arises on a post-judgment petition for an injunction pursuant to the All Writs Act, 28 U.S.C.A. § 1651, which gives federal courts the power to issue all writs necessary or appropriate in aid of their jurisdiction. Petitioners, who were plaintiffs in the original Castro v. Beecher case, seek, *inter alia*, an injunction enjoining the Civil Service Commission and twenty-seven Massachusetts cities and towns from "making police appointments or approving police appointments or failing to cancel police appointments" in any manner not consistent with the Consent Decree and Final Judgment entered by another Judge of this court on April 15, 1973.

The Civil Service Commission and its Director were defendants in the original action; however, none of the cities and towns against whom petitioners now seek relief were parties to the original case. This court has ancillary jurisdiction over this matter. Board of Education v. York, 429 F.2d 66 (10 Cir. 1970); 1 Moore Federal Practice ¶ 0.90 [3] at 822 (2d ed. 1974). Before considering the appropriateness of granting the requested relief, a summary of the lengthy history of this case and related litigation in the state courts is necessary

to an understanding of the present posture of this case.

The case originated in 1970 on a complaint which alleged, *inter alia*, that the Civil Service Police Entrance Examinations discriminated against black and Spanish-surnamed persons. Although the District Court found that the examinations given in 1968–1970 discriminated against minorities which did not share the prevailing white culture, it declined to grant preferential hiring to black and Spanish-surnamed applicants who had been the victims of the discrimination. 334 F.Supp. 930. That ruling was appealed. The Court of Appeals held that the Civil Service examinations in question were racially discriminatory and remanded the case with instructions that minority group persons who had been the victims of the discrimination be hired on a priority basis, provided they pass a non-discriminatory, job-related examination. 459 F.2d 725, 737 (1 Cir. 1972). On remand all parties to the litigation reached agreement as to the relief to be granted pursuant to the instructions of the Court of Appeals and a Consent Decree was presented to, approved and entered by the District Court as the Final Order on April 15, 1973. 365 F.Supp. 655 (D.Mass.1973). No appeal therefrom was ever taken.

The Consent Decree directed that four groups of eligible police officer candidates be established for each requisitioning police department: Group A consisted of minority applicants who failed discriminatory police entrance examinations in 1968–1970 but who passed the 1972 interim examinations and were otherwise qualified; Group B consisted of persons on three eligibility lists established in 1970–1971; Group C consisted of minority candidates not in Group A who passed the 1972 interim examination and were otherwise qualified; Group D consisted of all other persons who passed the 1972 interim examination and were otherwise qualified. The definition of each of the four groups provided: "Said candidates [or persons] shall be ranked in accordance with existing Massachusetts law." The Consent Decree also provided that candidates were to be certified to requisitioning police departments on the basis of one candidate from Group A for every candidate certified from Group B until Group A was exhausted. It further provided that thereafter one candidate from Group C was to be certified for every candidate from Group B until Groups B and C were exhausted, and that no candidate from Group D was to be certified until Groups A, B and C were exhausted. The Decree also provided for revival of Groups A, B and C in the event that a candidate qualified to be placed in one of those groups after exhaustion. The three lists in Group B were to expire on dates now past. The list comprising Group D is to expire in May, 1975. The Decree contains no expiration dates for the lists comprising Groups A and C.

After entry of the Consent Decree, twenty-seven Massachusetts cities and towns brought suit in the state courts seeking a ruling establishing the constitutionality of Massachusetts. Statute 1972, c. 226, which provides that residents of a city or town may be given preference over non-residents with respect to Civil Service certification of police appointments if the individual city or town so requests. On November 15, 1972 and again on April 15, 1973, the Attorney General of Massachusetts had issued Advisory Opinions stating that such preference was unconstitutional. The existence of the statutory preference for residents contained in c. 226 of the Acts of 1972 was not brought to the attention of the Judge of this court who entered the Consent Decree on April 15, 1973, although the Consent Decree apparently suspends its operation to some extent. On June 5, 1974, the Supreme Judicial Court held that the statute was constitutional in Town of Milton v. Powers, 1974 Mass.Adv.Sh. 843, 312 N.E.2d 188, but expressed no opinion as to the effect, if any, of this court's Consent Decree upon the operation of c. 226.

In addition to a final decree after re-script in the *Milton* case, the cities and towns sought and obtained an order from the same judge of the Superior Court which provided for Civil Service certification of candidates in the following order: (1) disabled veterans who are residents, (2) veterans who are residents, (3) residents, (4) disabled veterans who are nonresidents, (5) veterans who are nonresidents, (6) nonresidents. The order also enjoined the Civil Service Commission from certifying any police civil service lists in any other form. Town of Milton v. Powers, Equity No. 98258. This order which amounted to a nullification of the Consent Decree priorities put the Director of Civil Service in the position of being under mutually exclusive orders from a state and a federal court. His following the directions of either order would perforce amount to a refusal to follow the other. His only choice seemed to be that of which court's order he would be found in contempt.

The plaintiffs in *Castro* thereafter brought this suit pursuant to the All Writs Act, 28 U.S.C.A. § 1651 seeking injunctive relief against the Civil Service Commission and against the cities and towns which were plaintiffs in the state court litigation but which were not parties to the original *Castro* litigation. Petitioners ask that the Civil Service Commission and the named cities and towns be enjoined from "making police appointments or approving police appointments or failing to cancel police appointments in any manner not consistent with the Consent Decree and Final Judgment . . . entered . . . on April 15, 1973." On July 15, 1974 a temporary restraining order was entered by still another Judge of this Court acting as emergency judge, which enjoined the Civil Service Commission from approving any appointments not in conformity with the Consent Decree.

On July 19, 1974, the Civil Service Commission brought an action in the Supreme Judicial Court for the County of Suffolk, alleging that it was subject to contemporaneous conflicting injunctions and seeking relief. The *Milton* case was transferred to that Court and the order of June 26, 1974 was stayed. On November 25, 1974, a single justice of the Supreme Judicial Court reserved and reported the case to the full court. The plaintiffs in Castro v. Beecher were added as party plaintiffs. On December 11, 1974, the Supreme Judicial Court entered an order vacating the Superior Court order of June 26, 1974. That Court found no ambiguity in the Consent Decree concluding, as petitioners herein contend, that it preserved state statutory preferences only within each of the four groups established by the Consent Decree. Director of Civil Service v. Town of Milton, 1974 Mass.Adv. Sh. 2309, 320 N.E.2d 883.

 After review of the files in this case, this Court prompted by a concern for fairness to the cities and towns who were not parties to the Consent Decree and mindful of the well-established principle that a request for injunctive relief is addressed to the discretion of the court, ordered the petitioners to show cause why the relief requested against the cities and towns should not be denied. At the show cause hearing petitioners did not adduce any facts which would show that the relief requested against the cities and towns in paragraph 1 of their prayer for relief [1] is necessary to effectuate the Consent Decree. "[T]he power to grant injunctive relief should be used sparingly, cautiously, and only where the necessity for such relief is clear." Plumbers Local No. 519 v. Construction Industry Stabilization Committee, 350 F.Supp. 6 (S.D. Fla.1972). It is well settled in this Circuit that a movant for injunctive relief must show that denial thereof will visit

---

1. Other relief requested against the cities and towns with respect to litigation brought by them in state courts is rendered moot by

the order of the Supreme Judicial Court terminating that litigation.

irreparable harm upon him. Automatic Radio Mfg. Co. v. Ford Motor Co., 390 F.2d 113 (1 Cir. 1968); Celebrity, Inc. v. Trina, 264 F.2d 956 (1 Cir. 1959). No such showing has been made by plaintiffs herein with respect to the relief requested against the cities and towns. Therefore, petitioners' request for injunctive relief against the cities and towns is denied.

With respect to the Civil Service Commission and its Director, injunctive relief is also unnecessary in view of the fact that the Supreme Judicial Court vacated the order of the Superior Court which required certification of police applicants in a manner inconsistent with the Consent Decree. However, it is necessary that this court issue an order to the Civil Service Commission which spells out the effect on the Consent Decree of the operation of previously existing statutory preferences.

This court is in agreement with the ruling that the Supreme Judicial Court handed down on December 11, 1974, and finds that there is no ambiguity in the Consent Decree. In his memorandum accompanying the Consent Decree, Judge Wyzanski stated: "Neither there [in Group B] nor elsewhere are veterans' statutory preferences denied. There is *specific* preservation of those and *like rankings* in accordance with existing Massachusetts law." 365 F.Supp. at 658. (Emphasis added.) The specific preservation is made within each of the four groups established by the decree. At the end of the description of each group it is provided: "Said candidates [or persons] shall be ranked in accordance with existing Massachusetts law." The decree thus suspends operation of ch. 226, the residency preference, to the extent that its application would alter priorities among the Groups established by the decree.

 As this court noted in its order of December 10, 1974, denying the Town of Lexington's motion to convene a three-judge court, it is settled law that a federal court has the remedial power to suspend operation of concededly valid state statutes. Louisiana v. United States, 380 U.S. 145, 85 S.Ct. 817, 13 L. Ed.2d 709 (1965); Carter v. Gallagher, 452 F.2d 315 (8 Cir.), cert. denied 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972); Erie Human Relations Committee v. Tullio, 360 F.Supp. 628 (W.D.Pa. 1973). Therefore, this court will enter a decree ordering the Civil Service Commission to certify candidates on the basis of the priorities established by the Consent Decree and to give effect to Massachusetts statutory preferences, including ch. 226, the residency preference, only within each of the Groups.

 The expiration in August of the final list composing the B Group, and thus of the B Group as a whole, raises additional issues for consideration. First, it appears that for a good part of the past year permanent appointments to police departments throughout the state have been at a standstill due to confusion about the constitutionality of Chapter 226 and its effect on the Consent Decree. Consequently, out of fairness to the candidates on the March 26, 1971 eligibility list, this court will provide in its order a new expiration date for that list, namely, six months from the date of entry of this order, and in the interest of fairness the expiration date for the list of candidates comprising Group D is also postponed until six months from the date of this order.

The second issue presented by expiration of the B Group is difficult to resolve. By the terms of the Consent Decree, if the B Group is allowed to expire, no appointments may be certified until Groups A and C are exhausted. Groups A and C are composed solely of black and Spanish-surnamed persons. The Consent Decree, in its present form, appears to accord an absolute preference for an indefinite period of time to minority candidates. In this respect the decree goes beyond the relief mandated by the Court of Appeals which, in its opinion, clearly contemplated that all appointments would be made on a ratio basis. 459 F.2d at 736–737. Furthermore,

with respect to the absolute preference enjoyed by the C Group after expiration of the B Group, the decree is subject to serious constitutional challenge. See Carter v. Gallagher, 452 F.2d 315, 327–332 (8 Cir. 1971) (On Petition for Rehearing En Banc), cert. denied 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972). Therefore, absent an order of the Court of Appeals directing a different course of conduct, the plaintiffs and respondent members of the Civil Service Commission are ordered to submit to this court within five months from the filing of this order proposals for modification of the Consent Decree which would eliminate this problem. The parties are encouraged to arrive at a substitute Consent Decree to be submitted to this court for its approval and the court recommends to the parties the remedy adopted in N. A. A. C. P. v. Beecher, 371 F.Supp. 507, aff'd. 504 F.2d 1017 (1 Cir. 1974). This remedy was favorably commented on in the December 11, 1974 opinion of the Supreme Judicial Court because of its innate fairness in resolving conflicting interests.

The order filed herewith will continue in force until further action by this court. In the interim, permanent appointments to police departments are to be made on a ratio basis from Groups A and B. Upon exhaustion of Group A, permanent appointments are to be made on a ratio basis from Groups B and C as was contemplated by the Consent Decree.

This order does not affect the provisions of the Consent Decree of April 15, 1973 respecting Future Examinations, Recruitment and Reporting. Except for the time extension of the lists comprising Groups B and D, its sole intended effect is to clarify that decree.

## ORDER

The respondent Director of the Massachusetts Division of Civil Service, the respondent Massachusetts Civil Service Commissioners, and their successors in office shall promptly establish the following groups of police candidates, rank candidates within each group as specified and certify police applicants as eligible for appointment for each police department subject to Civil Service in the following manner:

I. Composition of Groups:

 i. Group A shall consist of all black and Spanish-surnamed applicants who failed any of the 1968–1970 Police Entrance Examinations, but passed the 1972 Interim Police Entrance Examination and are otherwise qualified for appointment on the basis of existing requirements.

 ii. Group B shall consist of all persons currently on the eligibility list established on March 26, 1971.

 iii. Group C shall consist of all black and Spanish-surnamed persons, excluding those in Group A, who passed the 1972 Interim Police Entrance Examination and are otherwise qualified for appointment on the basis of existing requirements.

 iv. Group D shall consist of all other persons, excluding those in Groups A, B and C, who passed the 1972 Interim Police Entrance Examination and are otherwise qualified on the basis of existing requirements.

II. Order of Ranking Within Groups

 i. Disabled Veterans who are residents

 ii. Veterans who are residents

 iii. Residents

 iv. Disabled Veterans who are nonresidents

 v. Veterans who are nonresidents

 vi. Nonresidents

III. Manner of Certification to Requisitioning Police Departments:

 i. In response to requisitions submitted by police departments, candidates shall be certified to such departments on the basis of one candidate from Group A

for every candidate certified from Group B until the list of candidates in Group A is exhausted.

ii. Upon the exhaustion of Group A, candidates shall be certified to requisitioning police departments on the basis of one candidate from Group C for every three candidates certified from Group B, until the candidates in Groups B and C are exhausted. The examination list comprising Group B shall expire six months from the date of this order.

iii. Should a candidate qualify to be placed into Groups A, B or C after exhaustion of the Group for which he is eligible, said Group will be revived for purposes of affording the candidate the position he would have enjoyed.

iv. Upon the exhaustion of Groups A, B and C, candidates shall be certified from Group D. Provided, that the list of candidates comprising Group D shall expire six months from the date of this order.

IV. Should an appointing authority fail to offer an appointment to a candidate certified from Groups A, B, C or D, respondents shall not authorize the requisitioning police department to make any appointment unless said police department has furnished respondents with a written statement of its reason why said candidate was not offered an appointment.

V. The plaintiffs and the Civil Service respondents are severally directed to submit to the Court not later than five months from the date of this order proposed amendments to the April 15, 1973 Consent Decree. Said amendments are to be in such form as to embody the rulings contained on pages 9–10 of the Court's Opinion filed herewith.

VI. To the extent, if any that the temporary injunction issued by the Emergency Judge of this Court on July 15, 1974 is inconsistent with the Opinion filed today that temporary injunction is dissolved.